Pitney Hardin LLP

(MAIL TO) P.O. BOX 1945 MORRISTOWN, N.J. 07962-1945
(DELIVERY TO) 200 CAMPUS DRIVE, FLORHAM PARK, N.J. 07932-0950
(973) 966-6300

Attorneys for Plaintiff
AmeriHost Franchise Systems, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERIHOST FRANCHISE SYSTEMS, INC., a Delaware Corporation, | : HONORABLE<br>: Civil Action No. 06- |
| Plaintiff, | : |
| v. | : **COMPLAINT** |
| PRABHSHARAN S. KAHLON, an individual; and DAVINDER S. KAHLON, an individual, | :<br>: |
| Defendants. | : |

Plaintiff AmeriHost Franchise Systems, Inc., by its attorneys, Pitney Hardin LLP, complaining of defendants Prabhsharan S. Kahlon and Davinder Kahlon, says:

AmeriHost Franchise Systems, Inc., Site 70200

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff AmeriHost Franchise Systems, Inc. ("AFS") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey.

2.     Defendant Prabhsharan S. Kahlon ("P. Kahlon"), on information and belief, is a citizen of the State of California, residing at 2031 LeMans Place, Stockton, California.

3.     Defendant Davinder Kahlon ("D. Kahlon"), on information and belief, is the spouse of P. Kahlon and is a citizen of the State of California, residing at 2031 LeMans Place, Stockton, California.

4.     The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over P. Kahlon and D. Kahlon (collectively, the "Kahlons"), by virtue of, among other things, section 17.6.3 of the February 20, 2001

Franchise Agreement by and between the Kahlons, as husband and wife tenants-in-common, and AFS (the "Franchise Agreement"), described in more detail below, pursuant to which the Kahlons have consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

7.   Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement, inasmuch as that provision contains an express waiver by the Kahlons of any objection to venue in this District.

### ALLEGATIONS COMMON TO ALL COUNTS

### The AmeriHost Marks

8.   AFS is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

9.   AFS has the exclusive right to sublicense the use of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "AmeriHost Marks"), as well as the distinctive AmeriHost® System, which provides hotel services to the public under the AmeriHost name and

- 3 -

certain services to its licensees, including a centralized reservation system, advertising, publicity, and training services.

10. AFS or its predecessors have continuously used each of the AmeriHost Marks since the date of their registration and these marks are in full force and effect pursuant to 15 U.S.C. § 1065.

11. AFS has given notice to the public of the registration of the AmeriHost Marks as provided in 15 U.S.C. § 1111.

12. AFS uses or has used the words "AmeriHost," among others, as abbreviations of its brand name.

13. Through its franchise system, AFS markets, promotes, and provides services to its guest lodging franchisees throughout the United States. In order to identify the origin of their guest lodging services, AFS allows its franchisees to utilize the AmeriHost Marks and to promote the AmeriHost brand name.

14. AFS has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to

- 4 -

recognize the AmeriHost Marks as distinctly designating AFS guest lodging services as originating with AFS.

15. The value of the goodwill developed in the AmeriHost Marks does not admit of precise monetary calculation, but because AFS is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of AFS' goodwill exceeds hundreds of millions of dollars.

16. The AmeriHost Marks are among the most famous in the United States.

<u>The Agreements Between The Parties</u>

17. On or about February 20, 2001, AFS entered into the Franchise Agreement with the Kahlons for the operation of a 59-room guest lodging facility located at 910 Highway 99 West, Corning, California, Site No. 70200 (the "Facility"). A true copy of the Franchise Agreement is attached hereto as Exhibit A.

18. Pursuant to section 5 of the Franchise Agreement, the Kahlons were obligated to operate an AmeriHost guest lodging facility for a twenty-year term, during which time the Kahlons were permitted to use the AmeriHost Marks in association with the operation and use of the Facility as part of AFS' franchise system.

- 5 -

19.  Pursuant to section 7 and Schedule C of the Franchise Agreement, the Kahlons were required to make certain periodic payments to AFS for royalties, service assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

20.  Pursuant to section 3.8 of the Franchise Agreement, the Kahlons were required to accurately account for and report, among other things, the amount of gross room revenue earned by the Kahlons at the Facility for purposes of establishing the amount of royalties and other Recurring Fees due to AFS.

21.  Pursuant to section 3.8 of the Franchise Agreement, the Kahlons agreed to maintain accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the Franchise Agreement, the Kahlons agreed to allow AFS to examine, audit, and make copies of the entries in these books, records, and accounts.

22.  Pursuant to section 11.2 of the Franchise Agreement, AFS could terminate the Franchise Agreement, with notice to the Kahlons, if the Kahlons (a) discontinued operating the Facility as an AmeriHost guest lodging establishment or (b) lost possession or the right to possession of the Facility.

- 6 -

23. Pursuant to section 12.1 of the Franchise Agreement, the Kahlons agreed that, if they terminated the Franchise Agreement, they would pay liquidated damages to AFS in accordance with a formula specified in the Franchise Agreement.

24. Pursuant to section 12.1.2 of the Franchise Agreement, also known as the Franchise Relations Policy, for terminations following the end of the third License Year, as that term is defined in the Franchise Agreement, liquidated damages would be (a) nothing if the Kahlons had experienced an occupancy rate at the Facility of less than 50% and were not otherwise in default of their obligations under the Franchise Agreement during the "Measurement Period," as that term is defined in the Franchise Agreement; or (b) equal to at least $2,000 per guest room, if the Kahlons had an occupancy rate of more than 50% or had otherwise defaulted on one or more of their obligations under the Franchise Agreement during the Measurement Period.

25. Section 13 of the Franchise Agreement specified the Kahlons' obligations in the event of a termination of the Franchise Agreement, including their obligation to immediately cease using all of the AmeriHost Marks or any confusingly similar mark or name to identify the Facility.

26. Pursuant to section 17.4 of the Franchise Agreement, the Kahlons agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."

27. Effective as of the date of the Franchise Agreement, the Kahlons each provided AFS with a personal Guaranty of their obligations under the Franchise Agreement (the "Guaranty"). A true copy of the Guaranty is attached hereto as Exhibit B.

28. Pursuant to the terms of the Guaranty, the Kahlons agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the [Franchise] Agreement."

29. Pursuant to the terms of the Guaranty, the Kahlons agreed that the non-prevailing party would pay the costs, including reasonable attorneys' fees, incurred by the prevailing party to enforce its rights or remedies under the Guaranty or the Franchise Agreement.

30. On or about February 13, 2003, AFS entered into an Addendum to the Franchise Agreement for Satellite Connectivity Services with P. Kahlon (the "Addendum"). A true copy of the Addendum is attached hereto as Exhibit C.

31. Pursuant to section 13(c) of the Addendum, P. Kahlon agreed that, in the event of a termination of the Addendum, he would pay "Addendum Liquidated Damages" in the amount of $1,000.

### The Defendants' Defaults and Termination

32. By letter dated June 10, 2004, a true copy of which is attached hereto as Exhibit D, the Kahlons advised AFS that they wished to terminate the Franchise Agreement effective immediately.

33. By letter dated June 29, 2004, a true copy of which is attached hereto as Exhibit E, AFS advised the Kahlons that if they did intend to terminate the Franchise Agreement, they would be required to pay liquidated damages plus recurring fees through the date the site ceased operating as an AmeriHost guest lodging facility. AFS further advised the Kahlons that if they terminated the Franchise Agreement, (a) they would be required to immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other

- 9 -

indicia of operation as an AmeriHost facility, and to discontinue the use of other materials on the premises effectively to distinguish the same from its former appearance as a AmeriHost facility, (b) all items bearing the AmeriHost Marks would have to be removed, and (c) all signs and any listings in directories and similar guides in which the Facility was identified as an AmeriHost guest lodging facility would have to be changed.

34. By facsimile dated July 1, 2004, a true copy of which is attached hereto as Exhibit F, the Kahlons advised AFS that their termination of the Franchise Agreement as provided in their June 10, 2004 letter was intended to be effectuated under the Franchise Relation Policy.

35. By letter dated July 29, 2004, a true copy of which is attached hereto as Exhibit G, AFS acknowledged the termination of the Franchise Agreement effective July 20, 2004, and advised the Kahlons that they failed to meet the requirements for terminating the Franchise Agreement under the Franchise Relations Policy (section 12.1.2 of the Franchise Agreement) because they had not been in full compliance with their obligations under the Franchise Agreement for the Measurement Period. AFS further advised the Kahlons that they were required to pay to AFS as liquidated damages for premature

- 10 -

termination the sum of $118,000 as required under the Franchise Agreement, plus $1,000 under the Addendum, and demand was made for all outstanding Recurring Fees through the date de-identification of the Facility was completed.

36. The termination of the Franchise Agreement precluded the Kahlons from any further use of the AmeriHost Marks in or around the Facility.

37. The termination of the Franchise Agreement precluded the Kahlons from any further use of the AmeriHost Marks to induce the traveling public to use the Facility in any way.

38. After the termination of the Franchise Agreement, the Kahlons continued to use the AmeriHost Marks to induce the traveling public to rent guest rooms at the Facility.

39. After the termination of the Franchise Agreement, the Kahlons used the AmeriHost Marks without authorization to rent rooms through, among other things, failure to remove AmeriHost signage, failure to replace AmeriHost rate cards, and failure to cease using the distinctive AmeriHost diamond shaped signs.

40. By letter dated August 19, 2004, a true copy of which is attached as Exhibit H, AFS reiterated the Kahlons'

post-termination obligations under the Franchise Agreement, including the requirement that, upon termination, the Kahlons completely "de-identify" the Facility as an AmeriHost Inn.

41. The Kahlons continued to misuse the AmeriHost Marks despite receiving notification from AFS to cease and desist from the misuse of the AmeriHost Marks.

### FIRST COUNT

42. AFS repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 41 of the Complaint.

43. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

44. The Kahlons marketed, promoted, and rented rooms at the Facility through the unauthorized use of the AmeriHost Marks, and such use caused confusion or mistake among

- 12 -

prospective or actual customers, in violation of Section 32 of the Lanham Act.

45. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods or services . . . shall be liable in a civil action . . . ."

46. The acts of the Kahlons in marketing, promoting, and renting rooms at the Facility, through and with the AmeriHost Marks, constituted:

(a) a false designation of origin;

(b) a false and misleading description of fact; and

(c) a false and misleading representation of fact;

- 13 -

that caused confusion, mistake, or deception, as to the affiliation of the Kahlons' Facility with AFS, and confusion, mistake, or deception, to the effect that AFS sponsored or approved of the guest lodging services that the Kahlons provided at the Facility, all in violation of Section 43(a) of the Lanham Act.

47. The Kahlons' acts of infringement in violation of Sections 32 and 43(a) of the Lanham Act were malicious, fraudulent, willful, and deliberate.

48. The Kahlons' acts of infringement in violation of Sections 32 and 43(a) of the Lanham Act have damaged AFS.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114 and 1125(a), AFS demands judgment against the Kahlons granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

49. AFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 48 of the Complaint.

50. Pursuant to sections 3.8 and 4.8 of the Franchise Agreement, the Kahlons agreed to allow AFS to examine, audit,

- 14 -

and make copies of the Kahlons' financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

51. The Kahlons have engaged in acts and practices, as described, which amount to infringement of the AmeriHost Marks in an unlawful, unfair, and fraudulent manner which is likely to have confused the public.

52. As a result, the Kahlons owe restitution and the disgorgement of profits, in an amount unknown to AFS, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from the Kahlons.

**WHEREFORE,** AFS demands judgment ordering that the Kahlons account to AFS for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the AmeriHost Marks.

### THIRD COUNT

53. AFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 52 of the Complaint.

- 15 -

54. Effective July 20, 2004, the Kahlons terminated the Franchise Agreement.

55. Section 12.1 of the Franchise Agreement provides that, in the event of termination of the Franchise Agreement due to action of the Licensee, the Kahlons shall pay liquidated damages to AFS within 30 days of termination.

56. As a result of the termination of the Franchise Agreement, the Kahlons are obligated to pay AFS liquidated damages in the amount of $118,000, as calculated pursuant to section 12.1.2 of the Franchise Agreement, plus $1,000 pursuant to section 13 of the Addendum.

57. Notwithstanding AFS' demand for payment, the Kahlons have failed to pay AFS the liquidated damages as required in section 12.1 of the Franchise Agreement and section 13 of the Addendum.

58. AFS has been damaged by the Kahlons' failure to pay liquidated damages.

**WHEREFORE,** AFS demands judgment against the Kahlons for liquidated damages in the amount of $119,000, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

59. AFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 58 of the Complaint.

60. By virtue of the premature termination of the Franchise Agreement, AFS sustained a loss of future revenue over the remainder of the 20-year term of the Franchise Agreement.

61. If the Court determines that the Kahlons are not liable to pay AFS liquidated damages as required by section 12.1 of the Franchise Agreement then, in the alternative, the Kahlons are liable to AFS for actual damages for the premature termination of the Franchise Agreement.

62. AFS has been damaged by the Kahlons' breach of their obligation to operate an AmeriHost guest lodging facility for the remaining term of the Franchise Agreement.

**WHEREFORE,** AFS demands judgment against the Kahlons for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

- 17 -

## FIFTH COUNT

63. AFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 62 of the Complaint.

64. Pursuant to section 7 and Schedule C of the Franchise Agreement, the Kahlons were obligated to remit Recurring Fees to AFS.

65. Despite their obligation to do so, the Kahlons failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $18,268.00.

66. The Kahlons' failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged AFS.

**WHEREFORE**, AFS demands judgment against the Kahlons for the Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit.

## SIXTH COUNT

67. AFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 66 of the Complaint.

- 18 -

68. At the time of the termination of the Franchise Agreement, the Kahlons were obligated to pay AFS Recurring Fees.

69. Despite their obligation to do so, the Kahlons failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $18,268.00.

70. In addition, the Kahlons benefited from their wrongful use of the AmeriHost Marks after termination of the Franchise Agreement and paid no royalty or other Recurring Fees to AFS in return for that benefit.

71. The Kahlons' failure to compensate AFS constitutes unjust enrichment and has damaged AFS.

**WHEREFORE,** AFS demands judgment against the Kahlons for the Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit, and all royalties and other Recurring Fees that should be paid to compensate AFS for the period during which the Kahlons misused the AmeriHost Marks and were thereby unjustly enriched, together with interest and costs of suit.

- 19 -

### SEVENTH COUNT

72. AFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 71 of the Complaint.

73. Pursuant to the terms of the Guaranty, the Kahlons agreed, among other things, that upon a default under the Franchise Agreement, each of them would immediately make each payment and perform each obligation required under the Franchise Agreement.

74. Despite their obligation to do so, the Kahlons have failed to make any payments or perform or cause each other to perform each obligation required under the Franchise Agreement.

75. Pursuant to the Guaranty, the Kahlons are liable to AFS for liquidated damages in the amount of $119,000, or actual damages in an amount to be determined at trial, and Recurring Fees due and owing under the Franchise Agreement, and for those additional Recurring Fees attributable to the period during which the Kahlons misused the AmeriHost Marks.

**WHEREFORE,** AFS demands judgment against the Kahlons for damages in the amount of:

(a) All liquidated damages or actual damages and Recurring Fees due and owing under the Franchise Agreement and Addendum, together with interest, attorneys' fees, and costs of suit; and

(b) All profits, royalties, and other Recurring Fees that should be paid to compensate AFS for the period during which the Kahlons misused the AmeriHost Marks and was thereby unjustly enriched, together with interest, attorneys' fees and costs of suit.


**PITNEY HARDIN** LLP
Attorneys for Plaintiff
AmeriHost Franchise Systems, Inc.

By: _____
         DENNIS R. LaFIURA
         A Member of the Firm

Dated:  November 21, 2006

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**PITNEY HARDIN** LLP
Attorneys for Plaintiff
AmeriHost Franchise Systems, Inc.

By: _Dennis R. LaFiura_____
　　　DENNIS R. LaFIURA
　　　A Member of the Firm

Dated:　　　November 21 , 2006